# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

United States of America,

        Plaintiff,                      **Criminal No. 14-199 (MJD/SER)**

v.

Jose Felix Ruiz-Valencia (1),            **REPORT & RECOMMENDATION**

        Defendant.

---

Allen A. Slaughter, Jr., John R. Marti, and Steven L. Schleicher, Esqs., United States Attorney's Office, 316 North Robert Street, Suite 404, Saint Paul, Minnesota 55101, for Plaintiff.

James S. Alexander, Esq., United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Craig E. Cascarano, Esq., Cascarano Law Office, 150 South 5th Street, Suite 3260, Minneapolis, Minnesota 55402, for Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case came before the undersigned on Defendant Jose Felix Ruiz-Valencia's ("Ruiz-Valencia") Motion to Suppress Confessions, Admissions or Statements Made in the Nature of Confessions Made by the Defendant ("Motion to Suppress Statements") [Doc. No. 97], Motion to Suppress Evidence Obtained Through Illegal Search [Doc. No. 98], and Motion to Suppress Search and Seizure Evidence [Doc. No. 99] (collectively, the "Motions to Suppress"). This matter was referred for the resolution of the issues raised in Ruiz-Valencia's Motions to Suppress pursuant to 28 U.S.C. § 636(b)(1)(B)–(C) and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends that the Motions to Suppress be denied.

I.      BACKGROUND

On June 17, 2014, a grand jury indicted Ruiz-Valencia and his co-defendant, Gonzalo

Alcala-Valencia ("Alcala-Valencia") with one count of conspiracy to distribute

methamphetamine in violation of 21 U.S.C. § 841(a)(1). (Indictment) [Doc. No. 5].

Alcala-Valencia withdrew his pretrial motions. (Letter to Mag. Judge Dated Sept. 23,

2014) [Doc. No. 70]. The Court held an evidentiary hearing on Ruiz-Valencia's pretrial motions

on February 20, 2015. (Minute Entry Dated Feb. 20, 2015) [Doc. No. 103]. Ruiz-Valencia's non-

dispositive pretrial motions were withdrawn, and a supplemental briefing schedule was set with

respect to Ruiz-Valencia's Motions to Suppress. (*Id.*). Officer Christian Freichels ("Officer

Freichels") testified, and the Court received six exhibits into evidence. (Ex. & Witness List)

[Doc. No. 104]. At the hearing, the parties agreed that the only issues remaining with respect to

the Motions to Suppress were whether Ruiz-Valencia's statements were taken in violation of his

right to counsel and whether the affidavit submitted in support of the application for the wiretap

of Ruiz-Valencia's phone was supported by probable cause. (Minute Entry Dated Feb. 20, 2015).

The parties submitted supplemental briefing, and the matter came under advisement on March 6,

2015. *See* (*Id.*).

II.     INVOCATION OF RIGHT TO COUNSEL

A.      Facts[1]

Officer Freichels interviewed Ruiz-Valencia on June 15, 2014, at the Ramsey County

jail. (Gov't's Mem. in Opp'n to Def.'s Mot. to Suppress, "Gov't's Opp'n") [Doc. No. 107 at 1].

Officer Freichels issued a *Miranda* warning to Ruiz-Valencia with the use of a Spanish-speaking

---

[1]     Neither party requested a transcript of the hearing, and Ruiz-Valencia does not challenge
the facts as the United States of America (the "Government") presented them in its
memorandum. (Def.'s Mem. in Supp. of Mot. to Suppress Statements, "Ruiz-Valencia's Mem. in
Supp.") [Doc. No. 108].

interpreter. (*Id.*). Although Ruiz-Valencia primarily denied involvement in the distribution of illegal drugs, he ultimately made some incriminating statements. (*Id.*).

At issue is the following statement from the interpreter, based on Ruiz-Valencia's statements: "He says if you are going to keep on telling him that that's what he does and that's what he does, then he's gonna—he wants to see a lawyer. Maybe you suspect things, but it's not like that."[2] (*Id.* at 2); *see also* (Gov't Ex. 6 at 16:08–18).[3]

## B.   Discussion

### 1.   Legal Standard

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. The Supreme Court adopted measures to ensure that a suspect is advised of his or her Fifth Amendment rights before custodial interrogations. *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). "[W]aivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (internal quotation marks omitted). When an accused has "expressed his desire to deal

---

[2]     Although the issue of Ruiz-Valencia possibly seeking an attorney initially arose earlier in the interview, Ruiz-Valencia concedes that the earlier statement "was equivocal, and not an invocation of the right to counsel for purposes of [applicable law]." (Ruiz-Valencia's Mem. in Supp. at 2). Thus, the Court does not analyze the earlier statement for the purposes of suppression.

[3]     At the hearing, the Government submitted Exhibit 6, a DVD recording of the interview with Ruiz-Valencia. (Ex. & Witness List). The Court was unable to view the DVD due to technological issues, and the Government separately delivered a recording of the audio only to the Court for review. The Court relies on this audio recording, and for the sake of clarity, refers to it as "Government's Exhibit 6," although it is not exactly the same exhibit submitted during the hearing.

with the police only through counsel," the interrogation must end, unless the accused "initiates further communication, exchanges, or conversations with the police." *Id.* at 484–85. An accused's request for counsel must be sufficiently clear, such that "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994). While it may be "good police practice" for a police officer to clarify any ambiguous statements made by the accused, it is not required. *Id.* at 461. "If the [accused's] statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." *Id.* at 461–62.

If a defendant makes a conditional invocation of counsel, the statements may still be admitted, as long as the statements "fall outside the conditions delineated by the suspect." *United States v. Wetsch*, Crim. No. 12-0045 (SRN/JJG), 2013 WL 1435228, at *27 (D. Minn. Feb. 8, 2013) (citing *United States v. Jacobs*, 97 F.3d 275, 280 (8th Cir. 1996); *United States v. Boyer*, 914 F.2d 1144, 146 (8th Cir. 1990)), *report and recommendation adopted by* 2013 WL 1435210 (Apr. 9, 2013); *see also United States v. Mohr*, 772 F.3d 1143, 1146 (8th Cir. 2014) (finding that defendant's conditional request for counsel was "ambiguous and insufficient to invoke his right to counsel" because the condition was not satisfied).

### 2.    Analysis

Ruiz-Valencia argues that "the statement 'he wants to see a lawyer' is a clear and unequivocal request for counsel" and is unlike the statements made by the defendants in *Davis* and *United States v. Havlik*, 710 F.3d 818 (8th Cir. 2003).[4] (Ruiz-Valencia's Mem. in Supp. at

---

[4]    Ruiz-Valencia does not argue that his statements were not voluntary, or that his waiver of his right to counsel was not knowing or intelligent. *See generally* (Ruiz-Valencia's Mem. in Supp.). Therefore, the Court does not address these issues.

2–3). The Government argues Ruiz-Valencia's request for counsel was conditional and was not a clear and unambiguous request for counsel. (Gov't Mem. in Opp'n at 4–5).

The Court finds Ruiz-Valencia's request for counsel was conditional. The interpreter, referring to Ruiz-Valencia said: "He said if you are going to keep on telling him that that's what he does and that's what he does, then he's gonna—he wants to see a lawyer. Maybe you suspect things, but it's not like that." (Gov't Ex. 6 at 16:08–18). Officer Freichels asks "what now?" and the interpreter repeats "that you probably suspect that he sells drugs but he doesn't do that." (*Id.* at 16:19–22). Officer Freichels says, "okay," and then asks if he can ask Ruiz-Valencia one more question. (*Id.* at 16:23–28). Ruiz-Valencia agrees, and Officer Freichels asks, "If I really do have a case on you, would you want to talk to me about it?" (*Id.* at 16:29–42). Ruiz-Valencia suggests he is willing to help Officer Freichels, and the conversation then turns to the events of the prior evening. (*Id.* at 16:58–17:22).

Ruiz-Valencia asked to speak to a lawyer **if** Officer Freichels was going to continue telling Ruiz-Valencia what he (Ruiz-Valencia) did. *See* (*id.* at 16:08–18). Officer Freichels did not continue telling Ruiz-Valencia what he did; instead, he turned the conversation towards whether Ruiz-Valencia was willing to help Officer Freichels and the events of the prior evening. *See* (*id.* at 16:19–17:22). In other words, the condition on which Ruiz-Valencia requested a lawyer was not satisfied. Under Eighth Circuit law, Ruiz-Valencia's request is therefore "ambiguous and insufficient to invoke his right to counsel." *See Mohr*, 772 F.3d at 1146.

For example, in *Mohr*, the defendant said "I want my lawyer. . . . [I]f you want this recorded, I want a lawyer present." *Id.* at 1145. The interview was not recorded, meaning the condition the defendant required to have a lawyer present was not met. *Id.* at 1146. The Eighth Circuit considered "whether [the defendant's] statement was sufficiently clear that in light of the

circumstances a reasonable officer would have understood that [the defendant] was unconditionally asking for a lawyer and not just that he '**might** be invoking the right to counsel.'" *Id.* (quoting *Davis*, 512 U.S. at 459). The court found that a reasonable officer in these circumstances "could have understood [the defendant's] statement to mean he was only requesting a lawyer **if** the interview was going to be recorded." *Id.* The court affirmed the district court's finding that these statements were "ambiguous and insufficient to invoke [the defendant's] right to counsel." *Id.*

Similarly, Ruiz-Valencia's request was conditional: he only wanted a lawyer if Officer Freichels was going to continue to tell him "what he does." *See* (Gov't's Ex. 6 at 16:08–18). Because Officer Freichels moved to another line of questioning, the condition was not satisfied. In fact, Ruiz-Valencia continued to engage with Officer Freichels, and when Officer Freichels offered to leave, Ruiz-Valencia again engaged him in conversation: first about his medicine, then about how Officer Freichels could help him. *See* (*id.* 16:43–17:22; 19:20–21:01). Therefore, Ruiz-Valencia's conditional request was ambiguous. *See Mohr*, 772 F.3d at 1146; *see also Boyer*, 914 F.2d at 146 (finding that defendant's assent to make a recorded phone call to an involved party only if he had a lawyer was a conditional request for counsel and the statements made after the conditional request "were outside of this context and therefore were admissible against him"); *United States v. Jacobs*, 97 F.3d 275, 280 (8th Cir. 1996) (finding that the defendant's request for an attorney if he had to take a polygraph test was "limited to the specific circumstance of taking a polygraph test[]" and because he did not take a polygraph test, he "was not denied his constitutional right to counsel."); *Wetsch*, 2013 WL 1435228, at *8, 30–31 (finding defendant's statement that he would talk to the interviewer and another officer if he could be transferred was a "limitation on the circumstances under which he would continue to

discuss the matter" and because he was transferred, the statements after his limited invocation but before he was transferred should be suppressed).

For the foregoing reasons, the Court recommends that Ruiz-Valencia's Motion to Suppress Statements be denied.

### III.   WIRETAP AFFIDAVIT

At the hearing, the parties agreed that one of the remaining issues regarding the Motions to Suppress was whether the wiretap affidavit was supported by probable cause. *See* (Minute Entry Dated Feb. 20, 2015). During the hearing, the Government introduced the application, affidavit, authorizing order, sealing application, and sealing order related to the wiretap. (Ex. & Witness List.).

Ruiz-Valencia's non-dispositive motion for **disclosure** of the wiretap evidence also mentioned three broad grounds for suppression. (Def.'s Mot. for Disclosure of Wire Taps, Oral Communications or Other Electronic Eavesdropping) [Doc. No. 93]. Both on the record and in the Minutes, the Court advised counsel that only those issues raised in the supplemental briefing would be addressed by the Court. (Minute Entry Dated Feb 20, 2015). Neither the Government nor Ruiz-Valencia addresses the wiretap affidavit in their supplemental briefing. Nonetheless, the Court reviewed the affidavit, and finds it is supported by sufficient probable cause. *See United States v. Milton*, 153 F.3d 891, 894 (8th Cir. 1998) (describing probable cause standard in context of wiretap). Therefore, the Court recommends that Ruiz-Valencia's Motion to Suppress Search and Seizure Evidence be denied.[5]

---

[5]     Ruiz-Valencia also moved to suppress "all material physical evidence" obtained through search and seizure, "including statements made by [Ruiz-Valencia] at the time of the search and seizure." (Mot. Suppress Evidence Obtained Through Illegal Search). But because these issues were not addressed at the hearing or in supplemental briefing, the Court recommends denying this motion as moot. *See* (Minute Entry Dated Feb. 20, 2015).

## IV.      RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that

1.      Defendant Jose Felix Ruiz-Valencia's ("Ruiz-Valencia") Motion to Suppress Confessions, Admissions or Statements Made in the Nature of Confessions Made by the Defendant [Doc. No. 97] be **DENIED**;

2.      Ruiz-Valencia's Motion to Suppress Evidence Obtained Through Illegal Search [Doc. No. 98] be **DENIED as moot**; and

3.      Ruiz-Valencia's Motion to Suppress Search and Seizure Evidence [Doc. No. 99] be **DENIED**.

Dated: March 31, 2015

*s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **April 14, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.